## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

RODNEY JENSEN
3301 S.E. Frontage Road,
Mount Pleasant, Wisconsin, 53177,

MICHAEL and MARY J. SCHMIDT
10514 County Line Road,
Mount Pleasant, Wisconsin, 53177,

ROGER STURYCZ
11604 County Line Road,
Mount Pleasant, Wisconsin, 53177,

ALFREDO and ERLINDA ORTIZ
4408 90th Street,
Mount Pleasant, Wisconsin, 53403,

TODD and TRACEY BLODGETT
13320 County Line Road,
Sturtevant, Wisconsin, 53177,

JOSEPH and KIMBERLY JANICEK                          Case No. 18-CV-46
4204 Highway H,
Sturtevant, Wisconsin, 53177,

CONSTANCE and RICHARD RICHARDS
12910 County Line Road,
Mount Pleasant, Wisconsin, 53177,


                        Plaintiffs,

vs.

1

VILLAGE OF MOUNT PLEASANT
a Wisconsin municipal corporation,
8811 Campus Drive,
Mount Pleasant, WI 53406,

DAVID DE GROOT
Village President of Mount Pleasant,
in his individual and official capacity,
8811 Campus Drive,
Mount Pleasant, WI 53406,

                    Defendants.

---

## COMPLAINT

---

Now come Plaintiffs, above captioned, by and through their attorneys Eminent Domain Services, LLC, by Attorney Erik Olsen, and for their Complaint state and allege as follows:

1) This is a 1983 case showing violations of the Plaintiffs' constitutional rights to equal protection, private property, and due process. The Plaintiffs' constitutional rights are being violated, and will be further violated, for at least four reasons. First, the Plaintiffs' land and homes are being taken by the Defendants for the benefit of a private corporation which intends to build an electronics factory on part of the land taken from the Plaintiffs, and the factory will be served by expanded roads and utilities built on part of the land taken from Plaintiffs. Second, the private corporation, which has a history of polluting, has been exempted from fundamental environmental requirements, such as creating an environmental impact statement and wetland permitting. Third, the Defendants propose to pay the Plaintiffs a fraction of the compensation that is being paid, or has been paid to

2

Plaintiffs' similarly situated neighbors.  Lastly, the Plaintiffs' property is being taken for a non-public purpose.

<u>FACTS</u>

2) On July 26, 2017 Governor Walker announced plans to use public funds and to otherwise facilitate the construction of a massive, privately owned, Foxxconn factory complex in Southeast Wisconsin ("Foxconn").

3) As widely reported in the news, Foxxconn is a manufacturer of computers and high tech products that has, to date, largely operated in Asia, with a history building and operating large factories that create substantial pollution problems.

4) On July 27, 2017 Governor Scott Walker and Foxconn Founder and CEO Terry Gou signed a Memorandum of Understanding (MOU).

5) On July 28, 2017 Governor Walker called a Special Session of the Wisconsin State Legislature to consider legislation ("the Legislation") designed to facilitate and attract the Foxconn factory project to Wisconsin by authorizing the creation of one (1) electronics and information technology manufacturing zone ("EITM zone").

6) By September 12, 2017 the Legislation had passed both the Wisconsin State Legislature and the Wisconsin State Senate.

7) On September 18, 2017 Governor Walker signed the Legislation, 2017 Act 58, into law.

8) The Legislation provides for financial incentives designed to attract Foxxconn to Wisconsin, and also eases environmental safeguards and requirements within the one (1) EITM zone. For example the legislation removes the requirement of completing an environmental impact statement ("EIS") and also allows for the filling and alteration of wetlands in the EITM, in some cases without any oversight or approval at all, and for a degree of protection from the Wisconsin Court System.

8) A prominent magazine reported "Wisconsin Just Gave Foxconn $2.85 Billion — and Protection From Its Court System — to Build a TV Factory"[1]

9) On November 10, 2017 Governor Walker and Foxconn Chairman Terry Gou signed a contract to provide up to $2.85 billion in state income tax credits to the company for the factory project.

10) Around October of 2017, most of the Plaintiffs received letters from the Village of Mount Pleasant indicating that their land, as well as the homes and businesses situated thereon, would be acquired by the Village for the Foxxconn project and the road and utility projects directly related thereto. *See* Exhibit A.

11) In late November 2017, the Village of Mount Pleasant and Racine County approved financing and, by act of its final policymakers, entered into a developer's agreement with Foxxconn, the developer's agreement appeared to have been prepared and edited shortly before it was approved by Mount Pleasant, engendering questions among the Plaintiffs about how well it had been considered.

---

[1] New York Magazine 09/21/17
http://nymag.com/daily/intelligencer/2017/09/wisconsin-gave-foxconn-preferential-treatment-in-its-courts.html

4

12) One of the terms of the developer's agreement is that Mount Pleasant is required to acquire approximately 2900 of acres of land ("the Acquisition") from various landowners ("Landowners") for use in the Foxxconn project.

13) The Acquisition is shown in the attached Exhibit A.

14) Part of the Acquisition will be directly conveyed to Foxxconn, part of the Acquisition will be held by the Village or its instrumentalities for Foxxconn's possible future use, and part of the Acquisition will be acquired using eminent domain and used for road and utility expansion project purposes.

15) The Village would not be expanding the roads in the Acquisition area, or undertaking the utility expansion projects in the Acquisition area if not for the Foxxconn project and the road and utility expansion projects are being specifically undertaken for the benefit of the Foxxconn.

16) The road and utility expansion project is directly related to and intertwined with the Foxxconn project, and is of a size and type such that it is *de facto* private purpose.

17) Certain access controls are being put on the expanded roads which would never be necessary, desirable, or lawful and are in fact a pretext to force the acquisition of the portions of Plaintiffs' land which will not be directly utilized for the road and utility expansion project so that it can be conveyed to Foxxconn, or held for Foxxconn's benefit, as required by the developers agreement.

18) Pursuant to Wisconsin law "Property that is not blighted property may not be acquired by condemnation by an entity authorized to condemn property under s. 32.02 (1)

or (11) if the condemnor intends to convey or lease the acquired property to a private entity." Wis. Stat. § 32.03(6)(b).

19) None of the land in the area of the Acquisition is blighted.

20) Wis. Stat. § 32.03(6)(b) was passed in response to *Kelo vs. New London*, and was intended to prevent government from taking private property for the direct benefit and convenience of private enterprise.

21) All of the land in the area of the Acquisition is being acquired for the direct benefit and convenience of private enterprise, namely, Foxxconn. The Defendants' implementation of Wis. Stat. § 32.03(6)(b) protects property owners who are not abutting roads from condemnation for private use, but not the identically situated landowners who happen to abut a road that is being expanded only for the use of the private company, the Defendants' policy of interpreting and implementing Wis. Stat. § 32.03(6)(b) in this manner is wholly arbitrary and without a rational basis.

22) Section 1.11 of the Wisconsin Statutes mandates an EIS stating that "All agencies of the state shall: Include in every recommendation or report on proposals for legislation and other *major actions* significantly affecting the quality of the human environment, a detailed statement, substantially following the guidelines issued by the United States council on environmental quality under P.L. 91−190, 42 USC 4331, by the responsible official on: 1. The environmental impact of the proposed action … ." Wis. Stat. § 1.11 (2)(c) (emphasis added).

23) The Foxxconn project will harm the environment in the area where the Plaintiffs reside by disrupting the environment, and likely, polluting the area.

24) For example, the Journal Sentinel reported that: "Foxconn Technology Group's plans for a sprawling manufacturing facility pose an array of environmental challenges, ranging from the way it will handle chemicals to the impact a plant of its size will have on the surrounding watershed ... in Asia, the Taiwan-based company, the world's largest contract manufacturer of consumer electronics, has grappled with pollution problems, particularly in China, where it serves as a contract manufacturer to Apple and other technology companies. A Wisconsin plant, like its facilities in Asia, would run through massive volumes of water that would have to be cleaned before and after production. Also, many potentially polluting chemicals are needed to build liquid crystal display panels for TV sets, laptops and wireless telephones. The fabrication of LCD components typically includes the use of zinc, cadmium, chromium, copper and benzene — a widely used organic solvent, according to experts. The Department of Natural Resources says it has not been briefed by the company on potential contaminants."[2]

25) The Foxxconn project has been exempted from the requirement of an environmental impact statement because the Legislation dictated that permitting and approvals within the EITM are *per se* not *major actions* and therefore not subject to Wis. Stat. § 1.11 and the Defendants have adopted a policy of using the Legislation to avoid the EIS requirements altogether.  The Defendants have not completed an EIS.

26) Additionally, the Legislation had the effect of exempting the EITM from many of the valuable environmental protections that are usually applicable under Wisconsin law, and the Defendants have adopted a policy of using the Legislation to avoid these requirements altogether.

---

[2] Milwaukee Journal Sentinel, 08/21/17 "Foxxconn Deal Raises Wide Array of Environmental Questions" Accessed 01/04/18 at
https://www.jsonline.com/story/news/local/wisconsin/2017/08/21/foxconn-deal-raises-wide-array-environmental-questions/575898001/

7

27) For example, on 01/04/18, the Wisconsin State Journal reported that "Wisconsin's decision to lift restrictions on filling state-protected wetlands for Foxconn Technology Group is already paying off for the company in the early stages of its plan for a sprawling manufacturing complex ... Wetlands are valued because they prevent flooding, purify groundwater and provide wildlife habitat."[3]

28) Although the Plaintiffs will be displaced by the project, they intend to stay in the area because of community, family, and business ties and thus will live in the immediate vicinity of the Foxxconn plant, which it the area that is already losing wetlands and is most likely to be affected by pollution and environmental disruption from the Foxxconn plant.

29) The Wisconsin Supreme Court has recognized that "it must be considered that the legislature intended to recognize the rights of Wisconsin citizens to be free from the harmful effects of a damaged environment where it can be shown that the person alleging injury resides in the area most likely to be affected by the agency action in question." *Wisconsin's Environmental Decade, Inc. v. PSC*, 69 Wis. 2d 1, 230 N.W.2d 243 (1975)

30) At a minimum, the Plaintiffs have been deprived by the policies of the reasoned and structured decision making process mandated by WEPA, Wis. Stat. § 1.11 *et seq*., and the basic environmental protections, for example, of valuable wetlands.

---

[3] Wisconsin State Journal, 01/04/18 "First environmental exemption clears Foxconn to fill 26 acres of wetlands"
http://host.madison.com/wsj/news/local/govt-and-politics/first-environmental-exemption-clears-foxconn-to-fill-acres-of-wetlands/article_c5b0dd02-dd4b-5f38-8686-00c58d7354f8.html

31) Possibly, the Defendants' policies of waiving the basic procedural and substantive protections will lead to the Plaintiffs living in polluted and degraded area with the accompanying irreparable harm to health the environment which would have otherwise been preventable.

32) The Defendants offered some of the Landowners, but not the Plaintiffs, option packages under which the Village optioned their property based on a formula which resulted in the optionees being compensated approximately seven times (but in some cases as much as ten times) the fair market value of their property. Exhibit A shows the optioned properties.

33) The Defendants created a policy under color of state law, of not offering option packages to the Plaintiffs in this case, because the Plaintiffs' properties abut roads. Instead the Defendants are going to use eminent domain to compensate the Plaintiffs based on a framework that provides 1/7th or less of the *pro rata* compensation that their similarly situated neighbors are receiving, and does not adequately compensate the Plaintiffs for their losses.

PLAINTIFFS

34) The plaintiffs are: RODNEY JENSEN, an adult resident of the State of Wisconsin who owns approximately three (3) acres of land, where his primary residence is located, at and around 3301 S.E. Frontage Road, Mount Pleasant, Wisconsin, 53177; MICHAEL AND MARY J. SCHMIDT, adult residents of the State of Wisconsin who own approximately two point nine one (2.91) acres of land, where their primary residence is located, at and around 10514 County Line Road, Mount Pleasant, Wisconsin, 53177; ROGER STURYCZ, an adult resident of the State of Wisconsin who owns approximately

9

one and a half (1.5) acres of land, where his primary residence is located, at and around 11604 County Line Road, Mount Pleasant, Wisconsin, 53177; ALFREDO AND ERLIINDA ORTIZ, adult residents of the State of Wisconsin who own approximately two (2) acres of land, where their primary residence is located, at and around; TODD AND TRACEY BLODGETT, adult residents of the State of Wisconsin who own approximately one point four (1.4) acres of land, where their primary residence is located, at and around 13320 County Line Road, Sturtevant, Wisconsin, 53177; JOSEPH AND KIMBERLY JANICEK, adult residents of the State of Wisconsin who own approximately one and a half (1.5) acres of land, where their primary residence and businesses including a limousine company and a trucking company are located, at and around 4204 Highway H, Sturtevant, Wisconsin, 53177; CONSTANCE AND RICHARD RICHARDS, adult residents of the State of Wisconsin who own approximately five point seven three (5.73) acres of land, where their primary residence is located, at and around 12910 County Line Road, Mount Pleasant, Wisconsin, 53177.

35) Together, the Plaintiffs own approximately 18.04 acres of land in the Acquisition area.

36) The Plaintiffs will be displaced from their homes as a result of the Acquisition.

37) Notwithstanding the fact that the Acquisition will displace the Plaintiffs, they currently intend to relocate only short distance away because of their substantial ties and interests in and to the community.

38) The Plaintiffs currently enjoy on their properties the privacy and quiet pleasures or rural life in their homes, including but not limited to outdoor activities in the area such as

snowmobiling, boating, gardening, dog walking, hiking, outdoor family events,
swimming, fishing, hunting, and the aesthetic enjoyment of things as simple as sunsets.

39) VILLAGE OF MOUNT PLEASANT, a Wisconsin municipal corporation, 8811 Campus Drive, Mount Pleasant, WI 53406.

40) In relation to all allegations in this complaint, the Village of Mount Pleasant has at all times acted, and threatens to further act, under color of state law.

41) DAVID DE GROOT, and adult resident of the State of Wisconsin who is signatory to the developer's agreement as the Village President of Mount Pleasant, an office which he currently holds, and is therefore responsible for the implementation of the developer's agreement and the Acquisition, he is sued in his individual and official capacity, 8811 Campus Drive, Mount Pleasant, WI 53406.

42) In relation to all allegations in this complaint, David De Groot has at all times acted, and threatens to further act, under color of state law.

## JURISDICTION & JURY DEMAND

43) This Court has jurisdiction over this action pursuant to Title 28 U.S.C. §§1331 and 1343(3) in that the controversy arises under the United States Constitution and under 42 U.S.C. §1983 and 28 U.S.C. §§2201 and 2202. This Court has authority to award attorneys fees pursuant to 42 U.S.C. §1988. Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. §1367(a) to hear and adjudicate state law claims to the extent that any are intertwined with the questions presented in this case. Each and all of the acts (or threats of acts) alleged herein were done by defendants, or their officers, agents, and employees, under color and pretense of the statutes, ordinances, regulations, customs and usages of state law. The Plaintiffs request a jury.

## FIRST CAUSE OF ACTION

## (42 U.S.C. SECTION 1983: EQUAL PROTECTION AND SUBSTANTIVE DUE PROCESS)

44) Plaintiffs incorporate by reference paragraphs 1- 43 as if fully set forth herein.

45) The the statutes, ordinances, regulations, policies, customs and usages of the Defendants, on their face and as applied or threatened to be applied, by Mount Pleasant and David De Groot, violate the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment.

46) First, specifically but not exclusively, by creating two classes of people, those who are protected from the taking of private property for non-public purposes, and those who are not because their property happens to be located near roads.

47) The Plaintiffs fall into the second group, their property, or parts thereof, is slated for taking through eminent domain even though some or all of it will be conveyed to a private entity, or used for road and utility projects that are entirely interwoven with the private entity's private interests and which would not be happening but for the EITM and the developers agreement.

48) This classification has a direct bearing on the fundamental interest in private property and equal protection of the laws. The Defendants have no rational basis to justify the creation of these classes. The Defendants' creation of these classes is irrational and wholly arbitrary.

Case 2:18-cv-00046-LA   Filed 01/08/18   Page 14 of 21   Document 1

49) The the statutes, ordinances, regulations, policies, customs and usages of the Village of Mount Pleasant, on their face and as applied or threatened to be applied, by the Village of Mount Pleasant and by Dave De Groot, deprive the Plaintiffs of valuable rights in the form of the right to equal protection, due process, and to be protected from takings of their land for private purposes.

50) The the statutes, ordinances, regulations, policies, customs and usages as pled herein are irrational and unreasonable, imposing unjustifiable deprivations and restrictions on the protected constitutional rights to equal protection due process, and private property. Because the statutes, ordinances, regulations, customs and usages and the application thereof to the Plaintiffs are irrational and unreasonable, their application violates the equal protection and due process guarantees of the Fourteenth Amendment to the United States Constitution and constitutes discrimination intentionally visited on the Plaintiffs by state law actors who knew or should have known that they had, and have, no justification, based on their public duties, for singling the Plaintiffs out for unfavorable treatment thereby acting for personal reasons, with discriminatory intent and effect.

## SECOND CAUSE OF ACTION

## (42 U.S.C. SECTION 1983: EQUAL PROTECTION AND DUE PROCESS)

51) Plaintiffs incorporate by reference paragraphs 1- 43 as if fully set forth herein.

52) The the statutes, ordinances, regulations, policies, customs and usages of the Defendants, on their face and as applied or threatened to be applied, by Mount Pleasant and David De Groot, violate the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment.

53) Second, specifically but not exclusively, by creating two classes of people, those who are protected from possibly polluting and environmentally disruptive projects through the reasoned and structured decision making process enshrined in Wis. Stat. 1.11 and other environmental safeguards and regulations, and those who are not.

54) The Plaintiffs fall into the second group, because the requirement of an EIS along with an array of environmental protections have been irrationally and wholly arbitrarily circumvented by the Village of Mount Pleasant and David De Groot as to the ETIM and Foxxconn, and the Plaintiffs have thereby been denied due process and equal protection of the laws.

55) This classification has a direct bearing on the fundamental interest in private property due process and equal protection of the laws. The Defendants have no rational basis to justify the creation of these classes. The Defendants' creation of these classes is irrational and wholly arbitrary.

56) The the statutes, ordinances, regulations, policies, customs and usages of the Defendants, on their face and as applied or threatened to be applied, deprive the Plaintiffs of valuable rights in the form of the right to be protected from environmental harms and careless, unstructured decision making for large possibly environmentally impactful decisions, unlike everybody else in the State who is protected under the Wisconsin Statutes.

57)  The the statutes, ordinances, regulations, policies, customs and usages as pled herein are irrational and unreasonable, imposing unjustifiable deprivations and restrictions on the protected constitutional rights to equal protection, due process and private property. Because the statutes, ordinances, regulations, customs and usages and the application thereof to the Plaintiffs are irrational and unreasonable, their application violates the equal protection and due process guarantees of the Fourteenth Amendment to the United States Constitution and constitutes discrimination intentionally visited on the Plaintiffs by state law actors who knew or should have known that they had, and have, no justification, based on their public duties, for singling the Plaintiffs out for unfavorable treatment thereby acting for personal reasons, with discriminatory intent and effect.

## THIRD CAUSE OF ACTION

## (42 U.S.C. SECTION 1983: EQUAL PROTECTION AND DUE PROCESS)

58) Plaintiffs incorporate by reference paragraphs 1- 43 as if fully set forth herein.

59) The the statutes, ordinances, regulations, policies, customs and usages of the Defendants, on their face and as applied or threatened to be applied, by Mount Pleasant and David De Groot, violate the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment.

60) Third, specifically but not exclusively, by creating two classes of people, those who are compensated for the acquisition of their land using option packages priced on the basis of  formula that pays seven times (but in some cases up to 10 times) the fair market value of the property acquired, and those whose property is going to be acquired through eminent domain and compensated a fraction (1/7th to 1/10th) of what their similarly situated neighbors are being compensated.

61) The Plaintiffs fall into the second group, because for reasons which are irrational and wholly arbitrary, namely that the Plaintiffs' properties abut roads, the Plaintiffs have not been offered option packages, wherefore, the Plaintiffs have been discriminated against, denied due process, and denied the equal protection of the laws.

62) This classification has a direct bearing on the fundamental interest in private property, just compensation, due process and equal protection of the laws. The Defendants have no rational basis to justify the creation of these classes.

18

63) The the statutes, ordinances, regulations, policies, customs and usages of the Defendants, on their face and as applied or threatened to be applied, deprive the Plaintiffs of constitutional rights to due process, private property, and equal protection.

64) It is arbitrary and irrational to compensate some landowners using a formula that pays them seven times to ten times the fair market value of their property, and other similarly situated landowners a fraction of this amount.

65) The the statutes, ordinances, regulations, policies, customs and usages as pled herein are irrational and unreasonable, imposing unjustifiable deprivations and restrictions on the protected constitutional rights to equal protection, due process and private property. Because the statutes, ordinances, regulations, customs and usages and the application thereof to the Plaintiffs are irrational and unreasonable, their application violates the equal protection and due process guarantees of the Fourteenth Amendment to the United States Constitution and constitutes discrimination intentionally visited on the Plaintiffs by state law actors who knew or should have known that they had, and have, no justification, based on their public duties, for singling the Plaintiffs out for unfavorable treatment thereby acting for personal reasons, with discriminatory intent and effect.

Case 2:18-cv-00046-LA   Filed 01/08/18   Page 19 of 21   Document 1

## FOURTH CAUSE OF ACTION

### (42 U.S.C. SECTION 1983: DUE PROCESS)

66) Plaintiffs incorporate by reference paragraphs 1- 43 as if fully set forth herein.

67) The the statutes, ordinances, regulations, policies, customs and usages of the Defendants, on their face and as applied or threatened to be applied by the Defendants, violate the Due Process Clause by not complying with the public use requirement of the Fifth Amendment.

68) Specifically but not exclusively by depriving Plaintiffs of their property without due process of law when the property taken is not for a public purpose.

69) The the statutes, ordinances, regulations, policies, customs and usages as pled herein are irrational and unreasonable, imposing unjustifiable deprivations and restrictions on the protected constitutional rights to equal protection, due process and private property. Because the statutes, ordinances, regulations, customs and usages and the application thereof to the Plaintiffs are irrational and unreasonable, their application violates the equal protection and due process guarantees of the Fourteenth Amendment to the United States Constitution and constitutes discrimination intentionally visited on the Plaintiffs by state law actors who knew or should have known that they had, and have, no justification, based on their public duties, for singling the Plaintiffs out for unfavorable treatment thereby acting for personal reasons, with discriminatory intent and effect.

WHEREFORE, Plaintiffs prays that this Court:

(a) Enter judgment against the defendant;

(b) Enter a declaratory judgment declaring the acts of the Defendants to be a violation of Plaintiffs' constitutional rights to due process, equal protection, and private property;

(c) Issue a declaratory judgment declaring that the developer's agreement is unconstitutional on its face because it deprives the Plaintiffs of the equal protection of the laws;

(d) Issue a temporary restraining order, and a preliminary and permanent injunction enjoining Defendants, their agents, servants, employees, officers and any others on their behalf from violating Plaintiffs constitutional rights as pled herein;

(e) Award Plaintiffs their costs, interest and reasonable attorneys' fees for this action pursuant to 42 U.S.C. §1988 and other relevant statutes; and,

(f) Order such other and further relief as the Court deems just and proper under the circumstances.

Dated this 8th day of January, 2018.


__/s/Erik S. Olsen_____
Erik S. Olsen
SBN 1056276
erik@eminentdomainservices.com

Eminent Domain Services, LLC
131 W. Wilson Street, Ste 304
Madison, WI 53703
(608) 661-8509