UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**RODNEY JENSEN et al.,**
      **Plaintiffs,**

  v.                                                                    Case No. 18-C-0046

**VILLAGE OF MOUNT PLEASANT et al.,**
      **Defendants.**

---

## DECISION AND ORDER

In 2017, the Village of Mount Pleasant entered into a development agreement requiring it to acquire private property for the construction and operation of manufacturing facilities that Foxconn Technology Group, a private company, plans to use to produce liquid crystal displays for consumer electronic devices like televisions. Rodney Jensen and other owners of property subject to acquisition under the terms of the development agreement bring this lawsuit against Mount Pleasant, Village President David DeGroot, and the Village of Mount Pleasant Community Development Authority alleging past, ongoing, and threatened violations of their federal constitutional rights. 42 U.S.C. § 1983. Jensen and his fellow plaintiffs seek declarations that the development agreement and defendants' conduct are unconstitutional and orders enjoining defendants from continuing to infringe their rights. Defendants move to dismiss the case arguing, among other things, that plaintiffs' claims are not yet "ripe" for consideration in federal court. Before considering defendants' arguments for dismissal, I briefly describe the asserted legal bases and supporting factual allegations for plaintiffs' claims.

# I. BACKGROUND

Plaintiffs assert claims under the Fifth Amendment's takings clause and the Fourteenth Amendment's equal protection and due process clauses. The takings clause bars the government from taking private property unless (1) the taking is for a "public purpose" and (2) the government provides "just compensation" to the property owner. The equal protection clause prohibits intentional and arbitrary discrimination by government officials. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923)). And the due process clause, as a "substantive" matter, forbids abuses of governmental power that are so arbitrary and oppressive that they shock the conscience. *Catinella v. Cook County*, 881 F.3d 514, 519 (7th Cir. 2018).

In support of their claims, plaintiffs allege that defendants plan to take their properties in order to sell or lease them to Foxconn for its private use. They allege that, to facilitate these takings, defendants first plan to take a strip of land from each of their properties, which abut major area roads; expand those roads, primarily for Foxconn's use and benefit; cut off their existing driveways; and prevent them from building new driveways connected to the expanded roads. Plaintiffs allege that defendants plan to use this "landlocking scheme" to "blight" their properties in order to circumvent a state-law prohibition on condemnation of "not blighted property" that "the condemnor intends to convey or lease . . . to a private entity." *See* Wis. Stat. § 32.03(6)(b).

Plaintiffs further allege that defendants are treating them much worse than their neighbors. For one thing, plaintiffs say, defendants are not planning to carry out their landlocking scheme against all of the properties Mount Pleasant is contractually

2

obligated to acquire for the Foxconn development, nor are they planning to acquire all of those properties through condemnation. Rather, plaintiffs allege that defendants have offered generous "option packages" to the owners of numerous other properties, for which they will receive (and, in many cases, already have received) up to ten times the fair market value of their properties. Plaintiffs say they have been offered as little as 1.4 times the value of their properties to sell and otherwise face condemnation.

Finally, plaintiffs allege that defendants' made a rushed and careless decision to approve and facilitate the Foxconn development. Specifically, plaintiffs say that defendants shirked their responsibility to rigorously assess the environmental impact of the development, thereby depriving them and other property owners in the area of public protection from private environmental harms.

## II. DISCUSSION

Defendants move to dismiss plaintiffs' claims primarily arguing that they are not ripe for adjudication, which simply means that it is too soon for a federal court to consider them. *See Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967)); *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 544 (7th Cir. 2008); Fed. R. Civ. P. 12(b)(1). Defendants also argue that plaintiffs' allegations about their decision making process and failure to produce an environmental impact statement for the Foxconn project fail to state a claim upon which relief can be granted, meaning that even if those allegations are true, plaintiffs are not entitled, as a result of them, to any relief that this court can provide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); Fed. R. Civ. P. 12(b)(6).

**A. Ripeness**

The ripeness doctrine requires federal courts to "avoid[] . . . premature adjudication" of claims, which can run afoul of "Article III limitations on judicial power" and "prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hosp. Ass'n*, 538 U.S. at 807–08 (quoting *Abbott Labs.*, 387 U.S. at 148; *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)). Courts apply different ripeness standards to different types of claims, depending on the circumstances presented, so I must first determine which standard applies to each of plaintiffs' claims and then assess whether each claim is ripe under the applicable standard.

**1. Takings Claims**

In general, claims asserted under the Fifth Amendment's takings clause are subject to the ripeness standard described by the Supreme Court in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). Under *Williamson County*, a claim is not ripe until the government entity responsible for the taking in question has made a "final decision" about the taking and the property owner has "exhausted" all available state procedures for challenging the taking. *See Peters v. Village of Clifton*, 498 F.3d 727, 732 (7th Cir. 2007) (citing *Forseth v. Village of Sussex*, 199 F.3d 363, 372 (7th Cir. 2000)).

Plaintiffs argue that, although *Williamson County* applies to some takings claims, it does not apply to claims, like theirs, that are based on the Fifth Amendment's "public use" requirement. Many federal circuit courts of appeals agree. *See Fideicomiso De La Tierra Del Caño Martin Peña v. Fortuño*, 604 F.3d 7, 16 (1st Cir. 2010) (collecting cases). But unlike those courts, the Seventh Circuit has consistently held that

4

*Williamson County* applies to *all* claims under the takings clause, including those "alleging a taking for private purpose." *See Daniels v. Area Plan Comm'n of Allen Cty.*, 306 F.3d 445, 453 (7th Cir. 2002) (citing *Forseth*, 199 F.3d at 370; *Covington Court, Ltd. v. Village of Oak Brook*, 77 F.3d 177, 179 (7th Cir. 1996)).

Plaintiffs' allegations that defendants plan to blight their properties under the guise of road expansion and then take their properties for Foxconn's private use or benefit give rise to Fifth Amendment takings claims, which are subject to *Williamson County* in this circuit. Plaintiffs do not dispute that defendants have not actually implemented their alleged plans—by, for example, commencing condemnation proceedings against plaintiffs' properties—so plaintiffs cannot have pursued, much less exhausted, their available state remedies for challenging those takings. Therefore, plaintiffs' Fifth Amendment claims are not ripe, and I must dismiss them.

**2. Equal Protection Claims**

*Williamson County*'s ripeness requirements apply to claims asserted under the Fourteenth Amendment's equal protection clause that are "merely re-labeled" takings claims. *Patel v. City of Chicago*, 383 F.3d 569, 573 (7th Cir. 2004). For example, in *Patel*, the Seventh Circuit held that an "equal protection" claim was actually a re-labeled takings claim where (1) the harm alleged was "depressed property values" due to planned government action (a kind of taking), (2) the plaintiffs primarily sought to enjoin the defendant municipality from using its condemnation powers, and (3) the court could not discern "the precise sort of equal protection claim" the plaintiffs were asserting. *See Flying J*, 549 F.3d at 544–45 (discussing *Patel*, 383 F.3d at 572–74).

Plaintiffs' "equal protection" claims challenging defendants' alleged plans to blight their properties, but not other similar properties, and take them for a private purpose are comparable to those discussed in *Patel* in that plaintiffs' alleged injuries are threatened takings and they primarily seek to enjoin defendants from using Mount Pleasant's condemnation powers to carry out those takings. Also, as in *Patel*, I cannot discern whether plaintiffs are alleging that defendants' conduct violates the equal protection clause because it "rests on wholly irrational distinctions" or because it amounts to "a spiteful effort to 'get' [them] for reasons wholly unrelated to any legitimate state objective." *Patel*, 383 F.3d at 572 (quoting *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995)). Either is a legitimate basis for an equal protection claim—and a plaintiff can allege alternative bases for a claim—but the nebulous nature of these claims, viewed in light of the injuries asserted and the relief requested, suggests that these "equal protection" claims are merely re-labeled takings claims that are, therefore, subject to *Williamson County*. Because plaintiffs have not exhausted their state remedies with respect to these claims, as *Williamson County* requires, I must dismiss them.

Unlike with merely re-labeled takings claims, federal courts generally do not need to postpone consideration of "*bona fide* equal protection claims" under *Williamson County*. *Forseth*, 199 F.3d at 370–71. Bona fide equal protection claims are those that legitimately challenge unequal treatment by the government. *Hager v. City of West Peoria*, 84 F.3d 865, 870 (7th Cir. 1996). Plaintiffs' equal protection claims challenging defendants' alleged practice of offering to buy some properties subject to the development agreement for as much as ten times their value while offering to buy plaintiffs' properties for no more than 1.4 times their value "would evaporate if

[defendants] treated everyone equally," which "indicates that plaintiffs claim unequal treatment." *Id.* Thus, these claims are ripe for adjudication.

Plaintiffs' equal protection claims challenging defendants' allegedly deficient decision making process and failure to produce an environmental impact statement for the Foxconn project are unrelated to plaintiffs' takings claims and based on alleged conduct that has already occurred. Therefore, these claims are also ripe. *See Rock Energy Co-op. v. Village of Rockton*, 614 F.3d 745, 748 (7th Cir. 2010).

### 3. Substantive Due Process Claims

*Williamson County* applies to claims challenging "a taking . . . as a denial of substantive due process." *Gamble v. Eau Claire County*, 5 F.3d 285, 287 (7th Cir. 1993). Thus, plaintiffs' claims challenging defendants' alleged plans to blight their properties and condemn them for a private purpose as a denial of substantive due process—that is, as an arbitrary and oppressive abuse of governmental power—are clearly subject to *Williamson County*. *See Forseth*, 199 F.3d at 369 n.8. As plaintiffs have not exhausted their state remedies with respect to these claims, they are not ripe, and I must dismiss them.

Plaintiffs' remaining substantive due process claims based on defendants' allegedly disparate offers to buy properties subject to the development agreement and perfunctory decision making process with respect to the Foxconn project, including their alleged indifference to its potential environmental impact, do not fundamentally challenge any takings. These claims also primarily concern past or ongoing conduct. Accordingly, these claims are ripe for adjudication. *See Rock Energy*, 614 F.3d at 748.

7

**B. Failure to State a Cognizable Claim**

As noted above, defendants argue that plaintiffs' allegations about their decision making process and failure to produce an environmental impact statement fail to state a claim upon which relief can be granted. Failure to state a claim on which relief may be granted is a basis for dismissal that a court may raise on its own, as well. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). In fact, I must dismiss this case or any part of it if I determine "at any time" that it fails to state a cognizable claim for relief. *Id.* A claim is cognizable only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**1. Equal Protection Claims**

Plaintiffs' ripe equal protection claims do not arise from government "distinctions among people based on . . . membership in a 'suspect' class," such as race or sex, or "denial of a fundamental right," like freedom of speech, so defendants' alleged conduct need only satisfy rational basis review. *Srail v. Village of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). As such, plaintiffs must allege facts that allow me to infer that (1) defendants "intentionally treated plaintiffs differently from others similarly situated" and (2) "this different treatment was not rationally related to a legitimate [government] interest." *Id.*

Plaintiffs first claim that defendants denied them equal protection by depriving them of "the thoughtful decision making process that . . . *other citizens of Wisconsin* . . . receive from *their* governmental officials," including assessment of the environmental impact of major projects. Pls.' Resp. Br., ECF No. 18, at 22 (emphasis added). However, that defendants treated plaintiffs differently than other municipalities and their officials treat other Wisconsin citizens does not show that defendants treated plaintiffs

8

differently than *defendants* treated others similarly situated, as required to state an equal protection claim. Further, individuals treated differently by different decision makers are rarely considered "similarly situated" for equal-protection purposes. *United States v. Moore*, 543 F.3d 891, 897 (7th Cir. 2008). Finally, plaintiffs cannot compare themselves to all "other citizens of Wisconsin" as "similarity requires specificity" lacking in such "overly broad" comparisons. *Srail*, 588 F.3d at 946.

Plaintiffs also claim that defendants denied them equal protection by offering them substantially less to sell their properties than their "similarly situated neighbors are receiving." Am. Compl., ECF No. 12, ¶ 58. Yet, plaintiffs offer nothing but conclusory assertions to show that they are similarly situated to their neighbors who were offered generous "option packages" to sell. "To be considered 'similarly situated,' a plaintiff and his comparators (those alleged to have been treated more favorably) must be identical or directly comparable in all material respects," *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010), which is to say, "similarly situated individuals must be very similar indeed." *McDonald v. Village of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004). Here, the only meaningful comparative information about plaintiffs and their neighbors comes from a map of the planned development area showing their respective properties that plaintiffs attached to their complaint. The map shows that plaintiffs' properties are small and peripheral, while the "option parcels" are generally much larger and closer to the initial building site. If anything, this suggests a lack of similarity between plaintiffs and their neighbors fatal to these claims.

Moreover, at the pleading stage, to plausibly allege that differential treatment is not rationally related to a legitimate government interest, a plaintiff must "overcome the

*presumption* of rationality attached to government action" by "negat[ing] *any* rational basis" for the challenged action, including the court's "hypothesized justifications." *See Flying J*, 549 F.3d at 545 (emphasis added). Here, defendants may have rationally decided to pay substantially more per acre for larger properties located nearer the initial building site because the failure to acquire those properties quickly and without the hassle of negotiation, much less legal proceedings, risked delaying the project as a whole or interfering with specific development plans. By contrast, acquiring plaintiffs' properties may simply be a lower priority because those properties are much smaller and marginally located. As I can surmise a rational basis for defendants' conduct, and plaintiffs offer nothing but conclusory assertions to show the irrationality of that conduct, plaintiffs fail to overcome the presumption that defendants acted rationally.

For the foregoing reasons, plaintiffs' ripe equal protection claims are not cognizable. Therefore, I must dismiss them for failure to state a claim on which relief can be granted. § 1915(e)(2)(B)(ii).

**2. Substantive Due Process Claims**

Plaintiffs' ripe substantive due process claims challenge defendants' conduct as "abuse of governmental power so arbitrary and oppressive that it shocks the conscience." *Catinella*, 881 F.3d at 519. This is a high standard violated by "only the most egregious official conduct." *Sacramento County v. Lewis*, 523 U.S. 833, 846 (1998). For example, the Supreme Court's "lodestar case" recognizing a violation of this standard "involved the forcible pumping of a criminal suspect's stomach," which the Court decried as a "course of proceeding by agents of government . . . bound to offend even hardened sensibilities." *Catinella*, 881 F.3d at 519 (quoting *Rochin v. California*,

342 U.S. 165, 172 (1952)). By contrast, the Court more recently held that a sheriff's deputy did not violate this standard "by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender." *Sacramento County*, 523 U.S. at 836.

Defendants' alleged conduct falls well short of shocking the conscience. That defendants offered to pay some property owners substantially more than others to acquire their properties is hardly "oppressive" in any actionable sense. Similarly, that defendants' decision making process was not sufficiently rigorous to appease plaintiffs does not mean, for example, that defendants "course of proceeding" was "bound to offend even hardened sensibilities." Substantive due process is "among the stingiest of constitutional protections," *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 865 (7th Cir. 2004), and the facts alleged in the operative complaint do not come close to allowing me to infer that defendants violated it. Thus, plaintiffs' ripe substantive due process claims are not cognizable, and I must dismiss them. § 1915(e)(2)(B)(ii).

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendants' motion to dismiss plaintiffs' first amended complaint or, in the alternative, to stay these proceedings (ECF No. 16) is **GRANTED in part** as discussed above and otherwise **DENIED**.

**IT IS FURTHER ORDERED** that, on defendants' motion to dismiss and pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), this case is **DISMISSED without prejudice**. The Clerk of Court shall enter final judgment accordingly.

**IT IS FURTHER ORDERED** that all other pending motions (ECF Nos. 3, 9, 17, 21) are **DENIED**.

Dated at Milwaukee, Wisconsin, this 2nd day of May, 2018.

    _s/Lynn Adelman_____
    LYNN ADELMAN
    District Judge